**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MAX LANCASTER, by and through Jan Green, next of friend and attorney-in-fact; PEGGY LANCASTER, by and through Jan Green, next of friend and attorney-in-fact,

      Plaintiffs - Appellants,

v.

JEFFREY CARTMELL, Director of Oklahoma Department of Human Services, in his official capacity; ELLEN BUETTNER, CEO/Director of Oklahoma Health Care Authority, in her official capacity,

      Defendants - Appellees.

No. 25-6000

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:24-CV-00842-J)**

_____

Michael Craig Riffel (Katresa J. Riffel, Jonathan F. Benham, and Matthew C. Russell, Riffel, Riffel & Benham, P.L.L.C., Enid, Oklahoma, with him on the briefs) for Plaintiffs-Appellants.

Ryan Gillett (Michael Williams, Oklahoma City, Oklahoma, with him on the brief) for Defendant-Appellee Ellen Buettner.

Susan L. Eads, Assistant General Counsel (Josh Holloway, Assistant General Counsel, Oklahoma City, Oklahoma, with her on the brief) for Defendant-Appellee Jeffrey Cartmell.

_____

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Max and Peggy Lancaster applied for Medicaid benefits. After their applications were denied, the Lancasters sued the directors of the Oklahoma Department of Human Services and Oklahoma Health Care Authority (the Agencies) under 42 U.S.C. § 1983, asserting that the Agencies violated the Medicaid Act—specifically 42 U.S.C. § 1396a(a)(8)—by unlawfully denying the Lancasters' Medicaid applications. The Agencies jointly moved to dismiss the lawsuit. The district court granted the motion, finding that the Lancasters were not eligible for Medicaid benefits because their financial resources exceeded the asset limitation for Medicaid eligibility. The Lancasters appealed.

During the course of the appeal, the Supreme Court decided *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025). The Agencies argue that under *Medina*, § 1396a(a)(8) does not confer an individual right enforceable though § 1983.

We agree and thus **AFFIRM**. The Supreme Court in *Medina* explained that a statute confers a personally enforceable right only if the law "clearly and unambiguously uses rights-creating terms" with an "unmistakable focus on individuals like the plaintiff." *Medina*, 606 U.S. at 368 (citations modified). It then found that § 1396a(a)(23)(A)—a provision materially similar to § 1396a(a)(8)—did

2

not satisfy that standard and rejected plaintiffs' private right of action. *Medina* applies with equal force to the Lancasters' claims here.

## I.    Background

The Lancasters[1] transferred approximately $3.8 million worth of their real and personal property to The Lancaster Family LLC, a limited liability company owned by their three adult children. In return, the Family LLC executed a loan agreement, real estate mortgages, personal guarantees, and a promissory note. The Lancasters then applied for Medicaid benefits but were found ineligible.

The Lancasters sued the Agencies in federal court under 42 U.S.C. § 1983, claiming a violation of 42 U.S.C. § 1396a(a)(8). According to the complaint, the Agencies erred in finding the Lancasters ineligible based on their asset determination; the Lancasters argue this determination violated § 1396a(a)(8), which requires the Agencies to promptly provide Medicaid benefits to eligible individuals.

The Agencies moved to dismiss and argued, in part, that the Family LLC's promissory note to the Lancasters was not bona fide—that is, the loan was not "legally valid under the applicable State's law and made in good faith." *See* POMS SI § 1120.220(B)(3). The promissory note was therefore a countable resource for purposes of determining the Lancasters' Medicaid eligibility. And because the Lancasters' resources exceeded the applicable threshold, the Agencies determined

---

[1] Mrs. Lancaster passed away during this litigation, and thus the Agencies request that her claims be dismissed. But because we dispose of the case on independent grounds, we need not address whether Mrs. Lancaster must be individually dismissed from this appeal.

that the Lancasters were not eligible for Medicaid benefits.  The district court agreed and granted the Agencies' motion.

While the appeal was pending oral argument, the Agencies jointly moved for summary disposition under Federal Rule of Appellate Procedure 27 and Tenth Circuit Rule 27.3(A)(1)(b).[2]  The Agencies cited *Medina v. Planned Parenthood South Atlantic*, which held that the any-qualified-provider provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(23)(A), did not clearly and unambiguously confer an individually enforceable right under § 1983.  606 U.S. 357.  They argued that *Medina*'s reasoning also applies to § 1396a(a)(8), the provision at issue in this case. The Agencies asserted that summary disposition was appropriate because *Medina* introduced a supervening change in law: legislation enacted pursuant to Congress's spending power, like Medicaid, does not create privately enforceable rights under § 1983 unless Congress uses clear, unambiguous, and unmistakable individual-focused and rights-creating language.

The Lancasters opposed summary disposition, arguing that *Medina* merely *clarifies* existing law as to when a statute creates individual rights.  On the merits, they argued that 42 U.S.C. § 1396a(a)(8) is distinguishable from the provision addressed in *Medina*.  And in contending that § 1396a(a)(8) confers a private right of action under § 1983, the Lancasters cited and heavily relied on a Third Circuit case,

---

[2] Tenth Circuit Rule 27.3(A)(1)(b) allows parties to file "a motion for summary disposition because of a supervening change of law or mootness."

*Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004), which made that exact holding. We denied summary disposition.

## II.   Discussion

As we explain, *Medina* requires us to conclude that § 1396a(a)(8) does not clearly and unambiguously confer a private right of action enforceable under § 1983.

### A.   *42 U.S.C. § 1396a(a)(8)*

In 1965, Congress enacted the Medicaid Act pursuant to its spending power "to subsidize state efforts to provide healthcare to families and individuals whose income and resources are insufficient to meet the costs of necessary medical services." *Medina*, 606 U.S. at 363 (citation modified). To receive those federal funds, States must submit a State plan for providing medical assistance and substantially comply with a series of conditions imposed by the Medicaid Act. 42 U.S.C. §§ 1396a(a), 1396c. One such condition is that "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." § 1396a(a)(8).

This is the provision that the Lancasters argue the Agencies violated by denying them Medicaid benefits despite their alleged eligibility.

### B.   **Medina v. Planned Parenthood South Atlantic***, 606 U.S. 357 (2025)*

In *Medina*, the Supreme Court considered whether an adjacent provision of the Medicaid Act, § 1396a(a)(23)(A), also known as the any-qualified-provider

5

provision, conferred an individually enforceable right under § 1983.  It determined that it did not.

### 1.     *Private Enforceable Rights under § 1983*

The Court began by explaining that while "§ 1983 allows private parties to sue state actors who violate their 'rights' under 'the Constitution and laws' of the United States," not all federal statutes confer enforceable rights.  *Medina*, 606 U.S. at 365–66 (citing *Health & Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166, 183 (2023)).

The Court proceeded to clarify "how to determine whether a statute confers an individually enforceable right under § 1983."  *Id.* at 367.  "To prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question 'clearly and unambiguously' uses 'rights-creating terms.'"  *Id.* at 368 (citation modified).  In part, the statute must "display an unmistakable focus on individuals like the plaintiff."  *Id.* (citation modified).  The Court described the test as "stringent" and "demanding" because federal statutes do not automatically confer rights enforceable under § 1983.  *Id.*  Rather, rights-creating provisions are rare exceptions.  *Id.* at 368, 380.  It noted that even after satisfying such requirements, "a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy."  *Id.* at 368 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005)).

6

With this background, the Court explained why it is especially unlikely that spending-power statutes like the Medicaid Act would confer an enforceable right under § 1983. *Id.* at 365, 369. The Court reasoned that Congress's spending power allows it to "offer funds to States that agree to certain conditions." *Id.* at 365. Accordingly, the "typical remedy" for violation of the conditions is for the federal government to terminate funds to the State; it is not a private enforcement suit. *Id.* at 365–66. That is because the statutes "address a State's obligations to the federal government, not the rights of any particular person." *Id.* at 379 (citation modified) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 288 (2002)); *see also Talevski*, 599 U.S. at 183 ("For Spending Clause legislation in particular . . . the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." (citation modified)).

The Court thus held that "whether a private party may sue to enforce the terms of a federal grant depends on 'whether the State voluntarily and knowingly' consented to answer private claims as part of its bargain with the federal government." *Medina*, 606 U.S. at 373 (citing *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). In other words, a plaintiff must demonstrate, at minimum, that Congress provided States with clear and unambiguous notice that the State may be subject to private enforcement suits should it fail to comply with federal funding conditions. *Id.* (citing *Pennhurst*, 451 U.S. at 17); *see also id.* at 376 ("Because spending-power legislation is 'in the nature of a contract,' a grantee must

7

'voluntarily and knowingly' consent to answer private § 1983 enforcement suits before they may proceed." (citation omitted)).

"[T]he Court [previously] restated these principles and explored how they interact with § 1983" in *Gonzaga University v. Doe*, 536 U.S. 273 (2002). *Id.* at 374. The Court acknowledged, however, that it had briefly "experimented with a different approach" by taking "an expansive view of its power . . . . to confer new rights under spending-power statutes that did not expressly provide them," which has since "given rise to some confusion in the lower courts." *Id.* at 375. But the Court explicitly clarified that lower courts should no longer consult cases from the pre-*Gonzaga* era— specifically it called out three cases: *Wilder*, *Wright*, and *Blessing*. *Id.* at 375–76; *see Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 432 (1987) (granting a statutory right under § 1983 for Public Housing Act[3]); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509–10 (1990) (granting a statutory right under § 1983 for a reimbursement provision of Title XIX of the Social Security Act because the legislation was "intended to benefit the putative plaintiff" and the plaintiff's interest in the statute was not "too vague and amorphous"); *Blessing*, 520 U.S. 329, 343–45 (denying individuals a general statutory right under § 1983 to enforce substantial compliance with Title IV–D of the Social Security Act).

---

[3] The Supreme Court in *Blessing* acknowledged that in *Wright*, it "did not ask whether the federal housing legislation generally gave rise to rights; rather, [it] focused [its] analysis on a specific statutory provision limiting 'rent' to 30 percent of a tenant's income." *Blessing v. Freestone*, 520 U.S. 329, 342 (1997) (quoting *Wright*, 479 U.S. at 430).

### 2.    *42 U.S.C. § 1396a(a)(23)(A): No Private Enforceable Right*

Applying those principles to the statute at issue, the Court concluded that

§ 1396a(a)(23)(A) did not confer an individually enforceable right because the

statute's "language speaks to what a State must do to participate in Medicaid."

*Medina*, 606 U.S. at 377.  Although the statute surely "seeks to *benefit* both providers

and patients," the Court held that it does not clearly and unambiguously *confer* on

individuals a federal right.  *Id.* at 377–78 (emphasis added).

Under the any-qualified-provider provision, States participating in Medicaid

must provide that

> any individual eligible for medical assistance (including
> drugs) may obtain such assistance from any institution,
> agency, community pharmacy, or person, qualified to
> perform the service or services required (including an
> organization which provides such services, or arranges for
> their availability, on a prepayment basis), who undertakes
> to provide him such services . . . .

42 U.S.C. § 1396a(a)(23)(A).

The Court pointed to the surrounding statutory context, which requires that a

State "comply substantially" with the requirements in § 1396a to receive federal

funding.  42 U.S.C. § 1396c.  It recognized that the statute's "focus on aggregate

compliance suggests that the statute addresses a State's obligations to the federal

government, not the rights of any particular person."  *Medina*, 606 U.S. at 379

(citation modified).  Moreover, the Court noted that the any-qualified-provider

provision was nested under a subsection titled "Contents," which outlines conditions

that "a state plan must include to qualify for federal funding."  *Id.*  And notably,

9

those conditions "are directed to the Secretary of Health and Human Services, who must 'approve any plan' that meets them." *Id.* (quoting § 1396a(b)).  Finally, the Court indicated the "mandatory terms" in the provisions—such as "must," "provide," or "shall"—do not necessarily create individual rights.  *Id.* at 380.

In conclusion, the Court reemphasized that rights-creating provisions in spending-power statutes are "atypical" exceptions and not the rule.  *Id.* at 380, 385–86.  So because the language in § 1396a(a)(23)(A) did not clearly and unambiguously confer individual rights, the Court held that the *Medina* plaintiffs lacked an individual right enforceable through § 1983.

### C.    42 U.S.C. § 1396a(a)(8)

We turn to the Lancasters' claim that 42 U.S.C. § 1396a(a)(8) confers a private right enforceable via § 1983.  We find that *Medina* squarely controls and reject that argument.[4]

To begin, much of *Medina*'s analysis regarding § 1396a(a)(23)(A) applies to § 1396a(a)(8).  Both are Medicaid Act provisions that are nested within the same subsection, titled "Contents," that lists requirements States must substantially comply with to receive Medicaid funding.  § 1396c(2).  Both are requirements directed to the Secretary of Health and Human Services for plan approvals.  And although § 1396a(a)(8) arguably has more "mandatory terms" and directives (such as that a

---

[4] The Lancasters' argument that *Medina* clarified existing law and was not a supervening change in law was relevant only in relation to the Agencies' motion for summary disposition and is not relevant to considering the appeal on the merits.

State "must . . . provide" certain obligations) than § 1396a(a)(23)(A), *Medina* teaches that mandatory language alone does not create individually enforceable rights.

Like the adjacent provision at issue in *Medina*, § 1396a(a)(8) is a Medicaid provision enacted under Congress's spending power. That fact requires an assessment of whether this provision is the atypical, rare exception that confers individual rights. *Medina*, 606 U.S. at 380. For the same reasons the *Medina* Court found that § 1396a(a)(23)(A) does not confer a private enforceable right, neither does § 1396a(a)(8).

Resisting this conclusion, the Lancasters urge us to follow *Sabree v. Richman*, a Third Circuit case from 20 years ago that held 42 U.S.C. § 1396a(a)(8) does in fact confer an individual right enforceable through § 1983.[5] 367 F.3d 180. They argue that *Sabree* applied the Supreme Court's instructions in *Gonzaga University*, which explained how to determine whether Congress provided such clear and unambiguous language that States may be subject to answer private suits under § 1983. And because *Medina* reaffirmed *Gonzaga University*, they argue *Sabree*'s analysis stands. We disagree.

While *Sabree* does rely on *Gonzaga University*, it did so by heavily leaning on the three Supreme Court cases disclaimed in *Medina*: *Wright*, *Wilder*, and *Blessing*. *Sabree*, 367 F.3d at 184–87; *see id.* at 184 ("[T]he Court relied on [*Wright* and *Wilder*] in crafting *Gonzaga University*. Accordingly, we will assess the rights

---

[5] The Supreme Court did not cite *Sabree* in *Medina*.

11

claimed by plaintiffs in light of *Wright, Wilder, Suter*, and *Blessing,* as construed by *Gonzaga University.*").  In fact, the Third Circuit explicitly applied the *Blessing* test, which finds a plaintiff to be within a statute's zone of interest and have unambiguously conferred rights if: (1) Congress intended plaintiff to be the intended beneficiaries of the law; (2) the rights to be enforced are specific and enumerated, and not "vague or amorphous"; and (3) the statute imposes an unambiguous "binding obligation on the States."  *See id.* at 186, 189.  As acknowledged by the Third Circuit, the three-prong *Blessing* test was established by drawing upon *Wright* and *Wilder*, as well as *Suter v. Artist M.*, 503 U.S. 347 (1992).  *Id.* at 186.

After concluding that the *Sabree* plaintiffs satisfied the *Blessing* test, the Third Circuit then addressed whether there were any rights-creating terms in § 1396a(a)(8) for that zone of interest under *Gonzaga University*.  *Id.* at 189–90.  It observed that the provision uses mandatory language such as "[a] State plan *must* provide."  *Id.* at 190 (emphases added).  And it noted that the provision focuses on individuals by making the entitlement available to "all eligible individuals."  *Id.*  The Third Circuit thus determined that the plain language of § 1396a(a)(8) clearly and unambiguously conferred a privately enforceable right.

But given the Court's directives in *Medina*, the analysis in *Sabree* cannot withstand scrutiny.  The Third Circuit determined that the provision had rights-creating language and was "confiden[t] in this conclusion [because it] rests securely on the fact that the Court has refrained from overruling *Wright* and *Wilder*, which upheld the exercise of individual rights under statutes that contain similar (or,

12

in the case of *Wilder*, identical) provisions to 42 U.S.C. § 1396." *Id.* at 192. The reason for its confidence no longer holds—the *Medina* Court explicitly stated that its "longstanding repudiation of *Wright* and *Wilder*'s reasoning" meant that those cases were unreliable in determining "whether spending-power legislation confers a privately enforceable right." *Medina*, 606 U.S. at 377. And although *Medina* did not expressly overturn the *Blessing* test, it stated that the *Blessing* test was rooted in the previously, and now rejected, "expansive view of [the Court's] power to imply private causes of action to enforce federal laws" and "confer new rights under spending-power statutes that did not expressly provide them." *Id.* at 375–76 ("Building on those same ideas in *Blessing* v. *Freestone*, the Court outlined a three-factor test for recognizing new privately enforceable rights. . . . To the extent lower courts feel obliged, or permitted, to consider the contrary reasoning of *Wilder*, *Wright*, or *Blessing*, they should resist the impulse.").

Moreover, *Sabree* relied on mandatory language in § 1396a(a)(8) to conclude that the provision confers individual rights—but that reasoning alone is not enough. *See id.* at 380 (finding that mandatory terms like "must" or "shall" do not necessarily create individual rights). Finally, *Sabree* held that because the provision focused on individuals rather than entities, § 1396a(a)(8) confers a privately enforceable right. But *Medina* repeatedly emphasized that provisions may benefit or even protect individual interests without conferring an enforceable right. *Id.* at 376–78.

13

## III.    Conclusion

We affirm because § 1396a(a)(8) does not confer an individual right enforceable by the Lancasters through § 1983.